# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **POARCH BAND OF CREEK INDIANS,** | ) <br> ) <br> ) |
| Plaintiff, | ) **Case No.:** 1:15-cv-00277-CG-C <br> ) |
| v. | ) <br> ) |
| **JAMES H. HILDRETH, JR.,** in his official Capacity as Tax Assessor of Escambia County, Alabama, | ) <br> ) **MOTION FOR AND** <br> ) **MEMORANDUM IN SUPPORT** <br> ) **OF PRELIMINARY** |
| Defendant. | ) **INJUNCTION** |

The Poarch Band of Creek Indians (the Tribe), pursuant to Federal Rule of Civil Procedure 65, seeks a preliminary injunction preventing the Defendant, Escambia County Tax Assessor James Hildreth, Jr., from proceeding with the unlawful assessment of state and/or local taxes on lands held in trust by the United States for the benefit of the Tribe (Trust Lands) and tribally owned permanent improvements on those lands (collectively, Trust Property). Trust Lands and permanent improvements thereon are expressly exempt from state and local taxation by federal law. *See* 25 U.S.C. § 465; *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 158 (U.S. 1973). Defendant Hildreth's assessment would violate this straightforward and well-settled exemption and infringe upon the Tribe's sovereignty and rights of self-governance. It is therefore subject to preliminary and ultimately permanent injunction.

## FACTUAL BACKGROUND

The Tribe is a federally recognized Indian tribe and the beneficial owner of Trust Lands located within the exterior geographic boundaries of Escambia County, Alabama. *See* Compl. (Doc. 1), ¶¶ 3 & 7-8; 80 Fed. Reg. 1942, 1945 (Jan. 14, 2015) (listing federally recognized Indian tribes). The Tribe's Trust Lands located within the exterior geographic boundaries of Escambia County are described in several deeds and related documents attached to the Tribe's Complaint. *See* Doc. 1-1. All of

the Trust Lands at issue in this case were taken into trust by the United States for the benefit of the Tribe between 1984 and 1992. *See id.*

Shortly after the first of the Trust Lands at issue were taken into trust by the United States, Defendant Hildreth requested an opinion from the Attorney General of Alabama regarding the lands' taxability. In August of 1986, the Attorney General correctly informed Defendant Hildreth that lands held in trust by the United States for the benefit of an Indian tribe are exempt from state and local taxation. *See* Doc. 1, ¶ 17; Doc 1-2. Consistent with federal law and the Attorney General's opinion, Defendant Hildreth has never assessed taxes on the Tribe's Trust Lands. *See* Doc. 1, ¶ 16.

In 2012, David M. Stokes, Chairman of the Escambia County Commission, wrote to the Department of the Interior to inquire as to whether the Tribe's Trust Lands in Escambia County are still held in trust. *See* Doc. 1, ¶ 18. Acting Assistant Secretary—Indian Affairs Donald Laverdure responded to Chairman Stokes with a letter reaffirming that the lands in question are "held in trust by the United States for the benefit of the Tribe." *Id.*; Doc. 1-3. Acting Assistant Secretary Laverdure further stated that the Tribe continued to enjoy "all rights and privileges associated with having its Reservation held in trust by the United States under Federal law." *Id.*

Despite his longstanding knowledge of the tax exempt status of the Tribe's Trust Lands and the Department of the Interior's very recent reaffirmation of the

Trust Lands' status, Defendant Hildreth informed the Tribe in January of 2014 that his office was initiating an audit "for the purpose of valuing and assessing for taxation *all property of the Poarch Band*, both real and personal, which is situated in Escambia County." Doc. 1, ¶ 19; Doc. 1-4 (emphasis added). The Tribe responded by providing Defendant Hildreth with information to assist in his valuation of the Tribe's taxable, non-trust property within Escambia County, while also reminding him that the Tribe's Trust Lands are exempt from state and local taxes and providing him with documentation of the lands' trust status. Doc. 1, ¶ 20; Doc. 1-5. Defendant Hildreth replied by incorrectly characterizing the Tribe's response as "incomplete and non-responsive" and clearly stating his intent to assess taxes, as well as associated penalties and fees, against the Tribe's Trust Lands. *See* Doc. 1, ¶ 21; Doc. 1-6. In response, the Tribe reiterated its legal position regarding the tax exempt status of its Trust Lands and provided Defendant Hildreth with relevant federal case law and a copy of Acting Assistant Secretary Laverdure's 2012 letter to Chairman Stokes. *See* Doc. 1, ¶ 23; Doc. 1-7.

On April 10, 2014, the United States District Court for the Middle District of Alabama issued an opinion affirming that the Tribe's Trust Lands in Escambia County and elsewhere in the State of Alabama are held in trust by the United States for the benefit of the Tribe. *See Alabama v. PCI Gaming Auth.*, 15 F. Supp. 3d 1161, 1182 & 1184 (M.D. Ala. 2014) (Watkins, C.J.) (appeal pending, 11th Cir. Case No.

14-12004). The Tribe promptly informed Defendant Hildreth of the court's decision. *See* Doc. 1, ¶ 24; Doc. 1-8. The Tribe reasonably assumed that this would satisfy Defendant Hildreth and that he would not further pursue his threats to assess taxes on its Trust Lands. *See* Doc. 1, ¶ 25.

In fact, Defendant Hildreth did not address the issue again for almost a year. Then, on or about March 2, 2015, the Tribe received a letter from Defendant Hildreth stating that his office had completed its appraisal of all of the Tribe's property – including its Trust Property – and was prepared to issue an assessment. *See id.*; Doc. 1-9. Tribal representatives subsequently met with Defendant Hildreth and his legal counsel to discuss the threatened assessment. Doc. 1, ¶ 26. During that meeting Defendant Hildreth reaffirmed his intent to proceed with an assessment of current and purported escaped taxes and penalties against the Tribe's Trust Property. *Id.* He also provided the Tribe with a list of property that he intended to assess, all or nearly of all of which was Trust Property. *Id.*; Doc. 1-10.

As its discussions with Defendant Hildreth were ongoing, the Tribe learned that the County's publicly available GIS website[1] no longer lists the Tribe's Trust Property as tax exempt despite listing the owner of the property as "United States of America in [Trust for Poarch Band of Creek Indians]." *See* Doc. 1, ¶¶ 28-29. The

---

[1] *See* www.alabamagis.com/Escambia/.

Tribe viewed this as further proof that Defendant Hildreth was no longer willing to recognize the Trust Property's tax exempt status.

Based on all of the foregoing information and other statements by Defendant Hildreth and his representatives, it is evident that Defendant Hildreth plans to proceed in the very near term with an unlawful assessment of taxes on the Tribe's Trust Property. *See* Doc. 1, ¶ 30. In an effort to avoid that unlawful assessment and concomitant infringement of its sovereignty and rights of self-governance, the Tribe filed the instant lawsuit on May 26, 2015. Doc. 1.

## ARGUMENT AND AUTHORITY

The Tribe seeks declaratory and injunctive relief that will permanently prevent Defendant Hildreth and his successors in office from attempting to assess state and local taxes on the Tribe's Trust Property in violation of federal law. Pending a final disposition on the merits, the Tribe seeks a preliminary injunction that will preserve the status quo and prevent irreparable injury to the Tribe and its sovereign interests.

The issuance of a preliminary injunction is committed to the sound discretion of the district court. *See, e.g.*, *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1330 (11th Cir. 2014). A preliminary injunction is appropriate where the moving party shows that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened

injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Id.* (internal quotation omitted). All of these factors weigh in favor of a preliminary injunction in this case.

**I.     The Tribe has a substantial likelihood of success on the merits.**

The Tribe has a substantial likelihood of success on the merits because its claim rests on a straightforward application of settled federal law. The Trust Lands at issue are held in trust by the United States for the benefit of the Tribe.[2] *See* Doc. 1-1; Doc. 1-4. Federal law expressly provides that lands held in trust by the United States for the benefit of an Indian tribe "shall be exempt from State and local taxation." 25 U.S.C § 465; *see also Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 158 (U.S. 1973); *Confederated Tribes of Chehalis Reservation v. Thurston Cnty. Bd. of Equalization*, 724 F.3d 1153  (9th Cir. 2013). The plain language of § 465 indisputably establishes that the Tribes' Trust Lands are exempt from all taxes that Defendant Hildreth intends to assess against them.

The structures and other permanent improvements on the Tribe's Trust Lands are likewise exempt from state and local taxation. The Supreme Court has held that

---

[2] Based on pre-suit discussions with Defendant Hildreth and his legal counsel, the Tribe understands that he thinks that the United States should not have taken lands into trust for the Tribe and should not hold lands in trust for the Tribe. Whatever the Defendant's feelings on those issues, they do not change the fact that, as shown by the deeds and correspondence attached to the Complaint, the Trust Lands *are* so held. *See* Doc. 1-1; Doc. 1-4.

§ 465 applies with equal force to lands held in trust and to permanent improvements on such lands. *See Mescalero Apache*, 411 U.S. at 158 ("In view of § 465, these permanent improvements on the Tribe's tax-exempt land would certainly be immune from the States ad valorum property tax."); *see also Chehalis*, 724 F.3d at 1157 ("*Mescalero* makes it clear that where the United States owns land covered by § 465, and holds it in trust for the use of a tribe … § 465 exempts permanent improvements on that land from state and local taxation."). Accordingly, all of the Trust Property is exempt from state and local taxation under settled federal law. The Tribe will succeed on the merits.

**II.    Assessment irreparably injures the Tribe.**

By purporting to assess the Tribe's Trust Property, Defendant Hildreth would assert jurisdiction over that property. This assertion of local jurisdiction over the Tribe's lands would substantially and irreparably infringe the Tribe's sovereignty and rights of self-governance.

As a federally recognized Indian tribe, the Tribe retains "attributes of sovereignty over both [its] members and [its] territory." *White Mtn. Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980) (internal quotation omitted); *see also Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2031 (2013) (discussing the "core aspects of sovereignty that tribes possess"). Tribal sovereign powers include "the power to manage the use of its territory and resources, both by members and nonmembers …

to undertake and regulate activity within the reservation … and to defray the cost of governmental services by levying taxes." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 335-336 (1983) (internal citations omitted); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 132 (1982). Like any sovereign, the Tribe has a strong interest in preserving and exercising its sovereignty and jurisdiction free of unlawful interference.

When, as here, a local government seeks to assert jurisdiction or other authority over tribal lands, it necessarily infringes and injures sovereign tribal sovereignty. *See, e.g.*, *Williams v. Lee*, 358 U.S. 217, 221 (1959) ("There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves."). Courts "have repeatedly stated that such an invasion of tribal sovereignty can constitute irreparable injury." *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006) (citing other cases). Defendant Hildreth's effort to assess the Tribe's Trust Property – and his concomitant assertion of taxing jurisdiction over that property – in and of itself infringes the Tribe's sovereignty and satisfies the irreparable harm prong of the preliminary injunction test. *See, e.g.*, *id.* at 1255-56 (agreeing with the district court's conclusion that "there was irreparable injury because the State Defendants impermissibly intruded on the Wyandotte's sovereignty by enforcing state law on

9

Indian land"); *Seneca-Cayuga Tribe of Okla. v. Okla., ex rel Thompson*, 874 F.2d 709, 716 (10th Cir. 1989) (affirming a preliminary injunction where proposed state action created "the prospect of significant interference with [a tribe's] self-government"); *Winnebago Tribe of Neb. v. Stovall*, 216 F. Supp. 2d 1226, 1233 (D. Kan. 2002) (holding that an injury to tribal sovereignty constitutes an irreparable injury because it "cannot be measured in dollars").

In addition to irreparably injuring the Tribe's sovereignty in an abstract sense, Defendant Hildreth, by attempting to exercise taxing authority over federally held Trust Lands, is asserting that the County – not the federal government or the Tribe – has jurisdiction over those lands. In so doing, he is questioning the very right of the Tribe to govern itself on its own lands and calling into question the propriety of all of the Tribe's governmental activities, including, but not limited to, law enforcement activities, fire protection, and provision of family welfare services. *See* Stinson Dec. ¶ 24. If the Tribe is unable to effectively perform these essential governmental services, it suffers an irreparable harm to its right of self-governance that is experienced not only by its own citizens, but also by others living on or near the Tribe's Trust Lands. This constitutes a separate and independently sufficient irreparable harm that supports entry of a preliminary injunction.

Finally, if Defendant Hildreth is allowed to proceed with an assessment before this Court addresses the merits of the Tribe's claim, then the Tribe, in order to protect

its interests, will be forced to challenge that assessment under state laws that do not apply to it and in a state forum that lacks jurisdiction over it. This would further infringe on the Tribe's sovereignty, and it also would unnecessarily waste the tribal resources that would be required to pursue parallel state proceedings while awaiting a resolution of the instant case on the merits. The Tenth Circuit has upheld a preliminary injunction under similar circumstances, explaining that it was appropriate to avoid forcing a tribe "to expend time and effort litigating in a court that does not have jurisdiction over [it], and risk inconsistent binding judgments from state and federal courts. *Seneca-Cayuga*, 874 F.2d at 716. A preliminary injunction is justified for the same reasons in this case.

### III.   An injunction will cause little or no harm to Defendant Hildreth.

The threatened injury to the Tribe plainly outweighs any potential harm that the proposed injunction would cause to Defendant Hildreth. Presumably because of the settled federal law discussed above and the 1986 Alabama Attorney General opinion reaffirming the tax exempt status of the Tribe's Trust Lands (Doc. 1-2), Defendant Hildreth has made no effort to assess taxes on the Tribe's Trust Property for three decades. He cannot now contend that he will suffer some substantial harm if he is forced to delay such an assessment for the relatively short period of time that it will take this Court to address the Tribe's claim on the merits. *See Wyandotte Nation*, 443 F.3d at 1256 (holding that the potential harm to a state resulting from

possible delay in enforcing its laws was minimal compared to potential harm to Indian nation resulting from unlawful exercise of state jurisdiction).

Even in the unlikely event that Defendant Hildreth's position is ultimately vindicated, a brief delay in assessing the Tribe's Trust Property would not seriously harm him. In fact, he has already identified a remedy for any harm that he might suffer – *i.e.*, the assessment of charges and penalties provided for late payment of taxes under Alabama state law. *See* Doc. 1-6 (indicating that Defendant Hildreth intended to assess fees and penalties provided under Alabama law against the Tribe). In light of all of the circumstances, any harm that Defendant Hildreth might suffer as a result of the proposed injunction is extremely slight and easily outweighed by the threatened injury to the Tribe's sovereignty interests inherent in an unlawful assessment of taxes on its Trust Property.[3]

## IV. The public interest favors an injunction.

Because the Tribe seeks enforcement of the plain language of a federal statute, the public interest favors an injunction. As the Eleventh Circuit recently explained, "[f]rustration of federal statutes and prerogatives are not in the public interest." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) (finding that the equitable aspects of the preliminary injunction tests favored enjoining the

---

[3] In light of the *de minimis* potential for harm to Defendant Hildreth and the putative availability of a monetary remedy (penalties and late payment fees) for any delay resulting from an injunction, a very modest security bond will satisfy the requirements of Rule 65(c) in this case.

enforcement of provisions of an Alabama law that were inconsistent with controlling federal law); *see also, e.g.*, *Charles H. Wesley Educ. Found. v. Cox*, 324 F. Supp. 1358, 1369 (N.D. Ga. 2004) ("The public has an interest in seeing that the State of Georgia complies with federal law …."). Additionally, and particularly in light of the high likelihood that the Tribe will prevail on the merits, the public has no interest in seeing Defendant Hildreth further expend and deplete public funds and resources pursuing an unlawful assessment of local taxes on the Trust Property. *See Fla. Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. Unit B 1981). Because the public interest favors the enforcement of federal law and avoiding the waste of public resources on unlawful actions by public officials, a preliminary injunction in this case would not be adverse to the public interest.

## CONCLUSION

Defendant Hildreth's efforts to assess taxes on the Tribe's Trust Property are tantamount to his assessing lands in Escambia County, Florida. He simply lacks the legal authority to do it. All of the factors necessary to support a preliminary injunction are present in this case, and the law controlling the merits could not be more clear. Accordingly, the Court should grant a preliminary injunction prohibiting Defendant Hildreth from proceeding with or issuing any assessment of the Tribe's Trust Property, specifically including all lands and improvements identified in Doc.

1-10, until such time as the Court has the opportunity to rule on the merits of the Tribe's request for declaratory relief and a permanent injunction.

Respectfully submitted this 4th day of June, 2015.

    s/ David C. Smith
David C. Smith
D.C. Bar No. 998932
dcsmith@ktslaw.com
Kilpatrick Townsend & Stockton LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 508-5800
Fax: (202) 505-5858

Mark Reeves
GA Bar No. 141847
mreeves@ktslaw.com
Kilpatrick Townsend & Stockton LLP
Enterprise Mill, Suite 230
1450 Greene Street
Augusta, GA 30901
Telephone: (706) 823-4206
Facsimile: (706) 828-4488

Charles A. Dauphin (ASB-5833-H65C)
cdauphin@dauphinparis.com
DAUPHIN PARIS, LLC
300 Vestavia Parkway
Suite 3400
Birmingham, Alabama 35216
Telephone: (205) 637-0591
Fax: (205) 979-6019

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on the 4th day of June, 2015, I served a copy of the foregoing by electronically sending a copy to the attorneys listed below who have accepted service on behalf of the Defendant and by placing a copy in the US Postal Service addressed to Defendant Hildreth, all as shown below:

Bryan M. Taylor
Btaylor@bachusbrom.com

Spencer Bachus
Sbachus@bachusbrom.com

James H. Hildreth, Jr.
Escambia County Courthouse
314 Belleville Ave. #210
Brewton, AL  36427

                                                 s/ Charles A. Dauphin
                                                 OF COUNSEL