IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| POARCH BAND OF CREEK INDIANS, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO. 1:15-0277-CG-C ) |
| JAMES H. HILDRETH, JR., in his official capacity as Tax Assessor of Escambia County, Alabama | ) ) ) ) ) |
| Defendant. | ) |

# ORDER

This case arises from a complaint filed by the Poarch Band of Creek Indians ("the Tribe") against in James H. Hildreth, Jr. ("Hildreth"), in his official capacity as the Tax Assessor of Escambia County. In the complaint, the Tribe sought relief to prevent Hildreth from levying property taxes against United States trust property held for the benefit of the Poarch Band of Creek Indians. Before the Court is the Tribe's motion for a preliminary injunction (Doc. 12) against James Hildreth, the Tax Assessor of Escambia Co., Alabama; Hildreth's corrected response in opposition (Doc. 16); the Tribe's reply (Doc. 25); and Hildreth's sur-reply (Doc 29). For the reasons stated below, the Court finds the Tribe is entitled to preliminary injunctive relief.

1

## BACKGROUND

In 1984, the Secretary of the Interior formally recognized the Poarch Band of Creek Indians as an Indian tribe. (Doc. 16, Exh. A). Soon after federal recognition, the United States took roughly 229.5 acres of land ("Trust land") in Escambia County into trust for the exclusive use and benefit of the Tribe. (Trust Deeds, Doc. 13, Exhs. A – J). The United States took the land into trust for the benefit of the Tribe pursuant to the Indian Reorganization Act ("IRA"), 25 U.S.C.A. § 465. Today, the Tribe occupies the Trust lands, has its own system of government and exercises jurisdiction. (Doc. 1, p.3, ¶ 9). The Trust land includes permanent improvements (collectively, "Trust Property"), most notably the structures that house the Tribe's gaming enterprise. (Doc. 1, p.3, ¶¶ 10 - 11).

In 1986, the Tax Assessor of Escambia County, James Hildreth, wrote the Alabama Attorney General and requested an opinion whether the Tribe's Trust property was subject to state and local taxes. (Doc. 1, Exh. B). In a letter dated August 18, 1986 to Hildreth, the Attorney General's office stated that the Tribe's Trust Lands "will be exempt from taxation in the future" and that "there is no authority for state taxation." (Ala. Atty. Gen. Op. 86-00327 (August 18, 1986); Doc. 1, Exh. B.) Hildreth then refrained from assessing taxes on the Trust land for over twenty-five years.

On April 17, 2012, the Escambia County Commission sent an inquiry to the Secretary of the Department of the Interior requesting information on

the status of the Trust lands in light of the Supreme Court's decision in Carcieri v. Salazar, 555 U.S. 379 (2009). (Doc. 16-3). On June 4, 2012, the Office of the Secretary of the Interior responded, stating that the Tribe's land is held in trust by the United States government and as such, the Tribe "enjoys all rights and privileges associated with having its Reservation held in trust by the United States under Federal Law." (Doc. 1, Exh. C).

On January 7, 2014, Hildreth informed the Tribe that "certain real and personal property of the Poarch Band of Creek Indians has escaped taxation." (Doc. 1, Exh. D). Hildreth stated that his office was initiating an audit "for the purpose of valuing and assessing for taxation all property of the Poarch Band, both real and personal, which is situated in Escambia County." (Doc. 1, Exh. D). The letter also stated that "any property which is claimed to be exempt from taxation must also be listed, and the burden is on the taxpayer to clearly establish its right to an exemption." (Id.).

In a letter dated February 28, 2014, the Tribe responded to Hildreth's request and provided a list of property, exclusive of the Trust property. Hildreth answered and stated that the Tribe's property listing was "incomplete and non-responsive." Hildreth informed the Tribe of his intention to proceed with an audit of "***all*** property of which the Poarch Band is the owner or holder within Escambia County, regardless of whether the Poarch Band considers to be "Trust Property." " (Doc. 1, Exh. F) (emphasis in the original).

3

On April 10, 2014, in a lawsuit brought by the State of Alabama against the commercial entity through which the Tribe conducts its gaming activities, the United States District Court for the Middle District of Alabama issued an opinion affirming that the Tribe's Trust lands in Escambia County are held in trust by the United States for the benefit of the Tribe. (Doc. 1, p. 6; See Alabama v. PCI Gaming Auth., 15 F.Supp.3d 1161, 1182 and 1184 (M.D. Ala. 2014)(Watkins, C.J.)(appeal pending, 11th Cir. Case No. 14-12004). The Tribe informed Hildreth of this decision in a letter dated April 22, 2014. (Doc. 1, Exh. H).

After the Alabama v. PCI Gaming Auth. decision, the Tribe did not hear back from Hildreth for several months. Then, in a letter dated February 26, 2015, Hildreth informed the Tribe that his office completed its appraisal of all of the Tribe's property, including land held in trust, and he requested a meeting. (Doc. 1, Exh. I). In April, the Tribe met with Hildreth and his legal counsel to discuss the assessment. (Doc. 1, p. 6, ¶26; Doc. 24 p. 6, ¶26).

On May 22, 2015, counsel for Hildreth sent an e-mail to Lori Stinson, the Attorney General for the Tribe, stating that Hildreth was available for a meeting on May 26, 2015 to discuss the tax matter. (Doc. 25, Exh. A). Hildreth's counsel also advised that "[w]e are hopeful that the parties can reach an amicable agreement very soon, but please know that Mr. Hildreth otherwise intends to formalize a tax assessment (including escaped taxes) by mid-June." (Doc. 25, Exh. A).

4

On May 26, 2015, the Tribe filed suit against Hildreth. (Doc. 1). In the complaint, the Tribe alleged that Hildreth intends to violate federal law by levying taxes on lands held in trust by the United States government for the benefit of the Tribe. Hildreth denies these allegations and states that under the Supreme Court's decision in Carcieri v. Salazar, the Tribe is not an Indian Tribe at all and that the Secretary of the Interior wrongful took the Trust lands into trust under 25 U.S.C.A. §465. (Doc. 24). On June 4, 2015, the Tribe filed a motion for a preliminary injunction to stop Hildreth from assessing the taxes on the Trust land. The Court now considers that motion.

## DISCUSSION

### A. Jurisdiction

A threshold issue is whether this Court has jurisdiction to hear this case. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994) (internal citations omitted).

In this case, Hildreth claims the Court lacks jurisdiction pursuant to the Tax Injunction Act ("TIA"), which states "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the

5

courts of such state."[1]  28 U.S.C. § 1341. Courts construe the TIA as a "jurisdictional rule and a broad jurisdictional barrier." Arkansas v. Farm Credit Servs. of Central Ark., 520 U.S. 821, 825, 117 S.Ct. 1776, 138 L.Ed 34 (1997). Though the TIA is a "broad jurisdictional barrier," it has exceptions, particularly in the context of federal law concerning Indian tribes.

In Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, et. al., 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the Supreme Court found that a federally recognized Indian tribe suing under its rights under 28 U.S.C. § 1362, were "to be accorded treatment similar to that of the United States had it sued on their behalf." Id. at 474. Therefore, since the Tax Injunction Act did not bar the United States from seeking to enjoin the enforcement of state tax law, the Court held that "the Tribe is not barred from doing so here." Id.

Here, the Tribe argues that its ability to enjoin the county tax collector from collecting taxes on trust lands falls squarely within the precedent of Moe and the Court agrees. Therefore, the Court finds that it has jurisdiction under 28 U.S.C. § 1362.

**B. Preliminary Injunction Standard of Review**

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of

---

[1] Hildreth argues that the Tribe is not an Indian Tribe under his interpretation of Carcieri v. Salazar, 555 U.S. 379 (2009). At this stage, the Court rejects this argument in section C, 1 below.

discretion." Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002). In order to succeed on his motion for the entry of a preliminary injunction, the Tribe must establish four prerequisites: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest. Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001) (internal citation and quotation marks omitted).

Courts do not hand out preliminary injunctions liberally. "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (internal citation and quotation marks omitted). Therefore, motions for preliminary injunctions should not "be granted until the movant clearly carries the burden of persuasion as to the four prerequisites. The burden of persuasion in all of the four requirements is at all times upon the plaintiff." Northeast Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (internal citation and quotation marks omitted).

### C. Preliminary Injunction

#### 1. Likelihood of Success on the Merits

The first factor when determining whether to issue a preliminary injunction is whether the movant has a substantial likelihood on success on the merits. In this case, the Tribe has a substantial likelihood of succeeding on the merits of its claim that Hildreth will violate the Indian Reorganization Act, 25 U.S.C.A. § 465, by assessing taxes on land held in trust by the United States government for the benefit of a federally recognized tribe.

The IRA explicitly states that "[t]itle to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation." 25 U.S.C.A. § 465.

Established by the 1984, 1992, and 1995 deeds filed on record, the United States holds title to the lands in question in trust for the benefit of the Tribe. (Doc. 13, Exhs. A – J). Hildreth challenges the Secretary of the Interior's taking of these lands into trust based on Hildreth's understanding of the Supreme Court's decision in Carcieri v. Salazar, 555 U.S. 379.

In Carcieri, a case brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, the Supreme Court construed the definition of "Indian" in the Indian Reorganization Act ("IRA"). Enacted in 1934, the IRA

authorizes the Secretary of the Interior "to acquire land and hold it in trust 'for the purpose of providing land for Indians.' " 555 U.S. at 381, 129 S.Ct. 1058 (quoting 25 U.S.C. § 465). The IRA defines "[t]he term 'Indian' as used in this Act [to] include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction...." 25 U.S.C. § 479. Applying the plain and unambiguous language of § 479, the Supreme Court held that "the phrase 'now under Federal jurisdiction' refers to a tribe that was under federal jurisdiction at the time of the [IRA's] enactment," 555 U.S. at 382, 129 S.Ct. 1058, rather than at the time the Secretary took the lands into trust. "As a result, § 479 limits the Secretary's authority to taking land into trust for the purpose of providing land to members of a tribe that was under federal jurisdiction when the IRA was enacted in June 1934." Id. Curiously, the Supreme Court provided no guidance on what constituted "under federal jurisdiction" as of 1934. In his concurrence, Justice Breyer noted that "[t]he statute after all, imposes no time limit upon recognition." Carcieri, 555 U.S. at 398, 129 S.Ct. 1058 (Breyer, J., concurring).

Hildreth claims that under Carcieri, the Poarch Band of Creek Indians is not an Indian tribe at all. However, a critical difference between the Carcieri case and the present, is in Carcieri, the state of Rhode Island brought a timely challenge under the APA of the Secretary of Interior's decision to take land into trust for the benefit of an Indian tribe. Since Carcieri, in cases analogous to this one, courts have found that challenges to

9

the Trust land acquisitions are subject to APA procedures, including the six-year statute of limitations for challenging agency decisions.² Three years after Carcieri, the Supreme Court confirmed that a challenge to the Secretary's decision to take land into trust is a "garden-variety APA claim." See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, – U.S. – , 132 S.Ct. 2199, 2208, 183 L.Ed.21 211 (2012)).

Just last year, our sister court, the Middle District of Alabama, heard the same Carcieri argument from the state of Alabama concerning the same trust lands as the present case. The State argued that the Secretary of the Interior impermissibly took lands into trust on behalf of the Poarch Creeks because they were not a federally recognized tribe when Congress passed the IRA in 1934. In his decision, Judge Watkins stated, "[t]he APA indisputably provides a proper framework for challenging the Secretary's land-into-trust decisions." Alabama v. PCI Gaming Auth., 15 F. Supp. 3d 1161, 1181 (M.D. Ala. 2014); see also Carcieri, 555 U.S. at 385, 129 S.Ct. 1058; Match–E–Be–

---

² See e.g., Big Lagoon Rancheria v. California, No. 10-17803, 2015 WL 3499884, at *5 (9th Cir. June 4, 2015), as amended on denial of reh'g (July 8, 2015) (stating, "Allowing California to attack collaterally the BIA's APA would constitute just the sort of end-run that we have previously refused to allow, and would cast a cloud of doubt over countless acres of land that have been taken into trust for tribes recognized by the federal government."); Alabama v. PCI Gaming Auth., 15 F.Supp. 3d 1161, 1182 and 1184 (M.D. Ala. 2014)(Watkins, C.J.)(appeal pending, 11th Cir. Case No. 14-12004); City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 702 F.3d 1147, 1153 (8th Cir.2013) (refusing to rule on the validity of the NIGC's decision because "such challenges are properly made under the [APA]," and "[t]he NIGC [was] not a party ..., and the City ha[d] not made a showing that the review process established by Congress in the APA might be circumvented here").

Nash–She–Wish Band of Pottawatomi Indians v. Patchak, ––– U.S. ––––, 132 S.Ct. 2199, 2208, 183 L.Ed.2d 211 (2012) (observing that a challenge to the Secretary's decision to take land into trust is a garden-variety APA claim); Kansas v. United States, 249 F.3d 1213, 1222–23 (10th Cir. 2001) (analyzing under the APA, a challenge to the NIGC's decision to issue a tribe a permit for class II gaming on "Indian lands," and, in particular, to the NIGC's Indian-lands determination). In rejecting the State of Alabama's interpretation, Judge Watkins noted that Carcieri involved a timely APA challenge to the Secretary's decision, which was not the case in PCI Gaming Auth. Judge Watkins wrote, "[t]he State cannot avoid the APA's procedures for reviewing the Secretary's decisions by simply reformulating its argument." PCI Gaming Auth., 15 F.Supp.3d. at 1181.

Hildreth's defense also relies heavily on United States v. State Tax Comm'n of the State of Mississippi, wherein the Fifth Circuit found that the Mississippi Band of Choctaw was not an Indian tribe under the IRA in 1934 because they had assimilated and gave up their land in various treaties in the 19th Century. 505 F.2d 633 (5th Cir. 1974). As a result, the Fifth Circuit held that federal government, through the district courts, had no jurisdiction to deal with the Choctaw. Three years later, based on its findings in United States v. State Tax Comm'n, the Fifth Circuit found that while "the citizens of the State of Mississippi of Choctaw Indian blood are, anthropologically, Indians they are nevertheless subject to the inherent police powers of the

11

State anywhere within its exterior boundaries." United States v. John, 560 F.2d 1202, 1212 (5th Cir. 1977) rev'd, 437 U.S. 634, 98 S. Ct. 2541, 57 L. Ed. 2d 489 (1978). On appeal, the Supreme Court reversed the Fifth Circuit, holding that "[n]either the fact that the Choctaws in Mississippi are merely a remnant of a larger group of Indians, long ago removed from Mississippi, nor the fact that federal supervision over them has not been continuous, destroys the federal power to deal with them." 437 U.S. 634, 653 (1978).

Here, this Court is not persuaded by Hildreth's defense that the Fifth Circuit's decision in U.S. v. State Tax Comm'n, allows Hildreth to subvert APA procedure requirements and cause the Tribe to lose its land with the stroke of a pen. At this stage Hildreth has presented no compelling evidence to contradict a finding that challenges to the Secretary of Interior's decision to take the Tribe's land into trust is anything more than a "garden variety APA claim." See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians, 132 S.Ct. at 2208.

Thus, the Court finds that the Tribe fulfilled its requirement of demonstrating a likelihood of success on the merits. The Tribe is a federally recognized Indian tribe and the United States holds land for its benefit. (Doc. 16, Exh. A). The Tribe filed the deeds on the record, which reflect that the land is held in trust for the benefit of the Tribe by the United States government. (Doc. 13, Exhs. A – J). Further, Congress explicitly provided in 25 U.S.C.A. § 465, that trust land is exempt from state and local taxes, such

as the one Hildreth attempts to levy here.

### 2. Substantial Threat Irreparable Injury

To succeed under the second factor, the Tribe must show a "substantial likelihood of irreparable injury" in the absence of a preliminary injunction. The Tribe asserts that Hildreth would injure the Tribe by impinging on the Tribe's sovereign immunity by assessing property taxes on the trust land. Thus, the Court is presented with two questions: (1) is Hildreth's assessment of property taxes imminent, and (2) would violation of 25 U.S.C. § 465 constitute irreparable harm?

First, to show a substantial likelihood, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.' " Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir.1990)). Here, Hildreth's counsel emailed the Tribe stating that "[w]e are hopeful that the parties can reach an amicable agreement very soon, but please know that Mr. Hildreth otherwise intends to formalize a tax assessment (including escaped taxes) by mid-June." (Doc. 25, Exh. A). Hildreth's counsel also informed the Tribe that after a meeting scheduled for May 26th, 2015, Hildreth did "not intend to participate personally in any other meetings regarding the Tax assessment." (Doc. 25, Exh. A). Hildreth claims that this email merely demonstrates an "open dialogue." (Doc. 16, p. 16). The Court disagrees. From the ongoing correspondence provided in the

13

record, it is apparent that Hildreth fully intended to assess taxes on the Tribe's Trust Property if the parties failed to come to an agreement at the meeting.

The second issue is whether irreparable harm occurs when a county official threatens to violate the Tribe's sovereign immunity by assessing property taxes on trust land, an action Congress explicitly bars under the Indian Reorganization Act § 465. This Court finds that it does.[3] As a federally recognized tribe, the Poarch Creeks are a "domestic dependent nation," that exercises "inherent sovereign authority." See Michigan v. Bay Mills Indian Cmty., 134 S. Ct. 2024, 2030-31, 188 L. Ed. 2d 1071 (2014) (citing Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (quoting Cherokee Nation v. Georgia, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)). As dependents, the tribes are subject to plenary control by Congress. Bay Mills, 134 S.Ct. at 2030; see also United States v. Lara, 541 U.S. 193, 200, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) ("[T]he Constitution grants Congress" powers "we have consistently described as 'plenary and exclusive' " to "legislate in respect to

---

[3] The Tenth Circuit has repeatedly found that "an invasion of tribal sovereignty can constitute irreparable injury." Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1255 (10th Cir. 2006); see also Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah, – F. 3d – , 2015 WL 3705904, *3 (10th Cir. 2015); Kiowa Indian Tribe of Oklahoma v. Hoover, 150 F.3d 1163, 1171- 72 (10th Cir. 1998); Seneca–Cayuga v. Oklahoma, 874 F.2d 709, 716 (10th Cir. 1989).

Indian tribes"). The Constitution explicitly grants Congress exclusive power to legislate in respect to the Indian tribes. Sovereign authority is a default amongst federally recognized tribes and the Supreme Court confirms that " 'until Congress acts, the tribes retain' their historic sovereign authority." Bay Mills, 134 S.Ct. at 2027 (quoting United States v. Wheeler, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978)).

Sovereign immunity is a cornerstone of the preserving of self-governance and the Tribe's existence as dependent sovereigns. Allowing Hildreth to assess taxes on Trust land would be tantamount to exercising sovereignty over the Tribe, and would also violate federal law under IRA.

Hildreth also claims that the assessment would not impair the Tribe's ability to continue to provide law enforcement activities, fire protection and the provision of family services. (Doc. 16, p. 18). To support this contention, Hildreth cites a news article discussing the Tribe's revenue from its lucrative gaming operation. (Id.) However, a Tribe's purported financial ability to pay a state or local tax is not a reason to violate the Constitution's provision that Congress has exclusive right to legislate concerning Indian tribes.

Therefore, the Court finds that the Tribe demonstrated a "substantial likelihood of irreparable injury."

### 3. Balance of Harms

The third factor is whether the threatened injury to the movant outweighs the hardship that would be experienced by the opposing party if

the preliminary injunction were issued. Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1035 (11th Cir. 2001). In making this assessment, the Court must "consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat. Resources Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (citations omitted). Here, the Tribe requests the Court enjoin Hildreth from levying property taxes on Trust property.

Hildreth argues that a preliminary injunction could result "in the permanent loss of significant tax revenues to which Escambia County is entitled for the provision of essential government services." (Doc. 16, p. 19).

The Tribe claims that if Court does not grant the preliminary injunction, Hildreth's levying of property taxes on trust land would be tantamount to him exercising jurisdiction over the Tribe. The Tribe points out that Hildreth refrained from collecting taxes on the trust land for thirty years, the last six of which are post-Carcieri. Additionally, the Tribe contends if Hildreth were to recover, he would merely assess charges and penalties provided for the late payment of taxes under Alabama state law, making his delay argument entirely unconvincing. (Doc. 12, p. 12).

Balancing the arguments of both sides, the Court finds that Hildreth's potential harm is not outweighed by the potential injury he will inflict if a preliminary injunction is not issued. By imposing taxes on the Tribal Trust Property, Hildreth would be exercising jurisdiction over the Tribe and

16

directly assaulting its sovereign immunity. See Wyandotte Nation v. Sebelius, 443 F.3d at 1255. The harm that may arise from delaying the assessment of property taxes is minimal at best, whereas the harm to the Tribe's sovereignty and well-being caused by permitting the county tax assessor to exercise jurisdiction over a tribe's trust property is substantial. Finally, what the Tribe requests is maintenance of the status quo, which is the purpose of a preliminary injunction. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (stating "[t]he purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held."). Therefore, the Court finds that Hildreth's potential harm does not outweigh that of the Tribe if he is allowed to proceed.

### 4. Public Interest

Finally, the requested preliminary injunction would not be adverse to the public interest. The Tribe requests application of federal law. Congress explicitly stated in 25 U.S.C.A. § 465 that trust land held for the benefit of Indian tribes is to be exempt from state and location taxation. It is in public's interest that the State and its officials comply with federal law. Indeed, "frustration of federal statutes and prerogatives are not in the public interest." United States v. Alabama, 691 F.3d 1269, 1301 (11th Cir. 2012). Therefore, the Court finds that granting the Tribe's motion for preliminary injunction does not violate public interest.

## CONCLUSION

The Court finds that the Tribe fulfilled its burden of proof required for a preliminary injunction. Granting this preliminary injunction will enjoin Hildreth from assessing property taxes on the land held in trust by the United States government for the benefit of the Tribe.

Accordingly, the Court hereby **GRANTS** the Tribe's motion for preliminary injunction and **ORDERS** that James Hildreth, the Tax Assessor of Escambia County, is prohibited from proceeding with or issuing any assessment of the Tribe's Trust Property. This injunction binds Hildreth and all his officers, agents, servants, employees, and others in active concert or participation with any of them, who would seek to levy tax on these trust lands.

**DONE** and **ORDERED** this 22nd day of July, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE