**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

POARCH BAND OF CREEK INDIANS, :

   Plaintiff/Counterclaim Defendant, :

v. :

THAD MOORE, JR., in his :
official capacity as Tax Assessor of
Escambia County, Alabama, :      CA 15-00277-CG-C

   Defendant/Counterclaim Plaintiff, :

v. :

UNITED STATES OF AMERICA, *et al.,* :

   Counterclaim Defendants. :

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on (a) the Motion to Dismiss Counterclaim (the "United States Motion to Dismiss") (Doc. 59) filed by the United States of America; the United States Department of the Interior; Sally Jewell, Secretary of the DOI (the "Secretary"); Kevin Washburn, Assistant Secretary-Indian Affairs ("Assistant Secretary-Indian Affairs"); and the Bureau of Indian Affairs; (b) the Motion to Dismiss Amended Counterclaims and to Strike Certain Affirmative Defenses (the "Poarch Band Motion to Dismiss and Strike") (Doc. 60) filed by the Poarch Band of Creek Indians (the "Poarch Band") and several individual members[1] of the Poarch Band of Creek Indians Tribal Council; (c) the Hildreth's Response in

---

[1]    Specifically, the individual members of the Poarch Band Tribal Council who are Counterclaim Defendants in this action are Stephanie Bryan, Robert McGhee, David Gehman, Arthur Mothershed, Keith Martin, Sandy Hollinger, Garvis Sells, and Kevin McGhee. Hereinafter, the undersigned will refer to these Counterclaim Defendants collectively as the "Poarch Band Members".

Opposition to Counterclaim Defendants' Motions to Dismiss (the "Tax Assessor Response") (Doc. 65-1) filed by James H. Hildreth, Jr.;[2] (d) the Untied States' Reply in Support of Motion to Dismiss Counterclaim (Doc. 69) filed by the United States; and (e) the Reply Brief in Support of Motion to Dismiss Counterclaims and Strike Certain Affirmative Defenses (Doc. 70) filed by the Poarch Band and the Poach Band Members. After careful consideration of the aforementioned filings and the arguments of counsel[3] at the December 22, 2015 hearing (the "Hearing"), it is **RECOMMENDED** that the United States Motion to Dismiss be **GRANTED** and the Poarch Band Motion to Dismiss and Strike be **GRANTED IN PART** and **DENIED IN PART**, for the reasons stated herein.

<u>Background</u>

The Poarch Band initiated this action on May 26, 2015 seeking declaratory and injunctive relief against the Tax Assessor in his official capacity. (*See* Doc. 1). On June 4, 2015, the Poarch Band filed an amended complaint (the "Amended Complaint") (Doc. 11) alleging that the Tax Assessor intends to violate federal law by levying taxes on lands located in Escambia County, Alabama held in trust by the United States for the benefit of the Poarch Band.[4] Accordingly, the Poarch Band seeks (1) a declaration that

---

[2]     Thad Moore, Jr., Hildreth's successor in office, was subsequently substituted for Hildreth as a party in this action pursuant to FED. R. CIV. P. 25(d). (*See* Doc. 68 n.1). Hereinafter, the undersigned will refer to the Defendant/Counterclaim Plaintiff in this action as the "Tax Assessor."

[3]     At the Hearing, Bryan M. Taylor appeared on behalf of the Tax Assessor. He has since withdrawn as counsel of record for the Tax Assessor in this action. (*See* Docs. 72 & 74).

[4]     The lands held in trust by the United States for the benefit of the Poarch Band (the "Trust Property") were transferred to the Department of the Interior through multiple transactions spanning from 1984 to the mid 1990s. *See* Doc. 66-1 (copies of (Continued)

the assessment of local property taxes on the Trust Property, as well as tribally owned structures and permanent improvements attached thereto, is unlawful and (2) preliminary[5] and permanent injunctions against any future assessment of local property taxes on the Trust Property.

On August 4, 2015, the Tax Assessor filed the Amended Answer, Affirmative Defenses, and Counterclaims (the "Amended Answer") (Doc. 41). In the Amended Answer, the Tax Assessor asserts 12 affirmative defenses, several of which are premised on the argument that pursuant to the United States Supreme Court's decision in *Carcieri v. Salazar*, 555 U.S. 379, 391 (2009), the Poarch Band is not an "Indian tribe" within the meaning of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 *et seq*. ("IRA"), and, thus, the Secretary's decision to take the Trust Property for the benefit of the Poarch Band was unlawful.[6]

---

deeds and other documentation showing the United States' ownership in the Trust Property). The most recent deed or other documentations attached to the Amended Complaint is dated August 17, 1992. (*See* Docs. 66-1 at 1 & 41 at 21). However, at the Hearing, the Tax Assessor alleged that the latest conveyance of land to the Secretary to be held in trust for the Poarch Band occurred in 1995. Since both of these dates are more than six years before the Tax Assessor's current challenge to the Secretary's decisions, the precise date is insignificant for purposes of the undersigned's analysis in this Report and Recommendation.

[5]     On July 22, 2015, Judge Granade issued an Order (the "Preliminary Injunction Order") (Doc. 36) granting the Poarch Band's motion for preliminary injunction and prohibiting the Tax Assessor from proceeding with or issuing any assessment of the Trust Property. The Tax Assessor subsequently appealed the Preliminary Injunction Order to the Eleventh Circuit Court of Appeals, which affirmed the order on July 11, 2016. (*See* Docs. 38-40 & 75).

[6]     The IRA authorizes the Secretary to acquire property and hold it in trust "for the purpose of providing land for Indians." 25 U.S.C. § 465; *see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S.Ct. 2199, 2202-03 (2012). Once entrusted to the United States, the land is "exempt from State and local taxation. 25 U.S.C. § 465. In *Carcieri*, the Supreme Court ruled that the Secretary's authority to take (Continued)

The Tax Assessor also asserts counterclaims against the Poarch Band, the Poarch Band Members, the United States,[7] and the Trust Property, along with the permanent improvements made thereon. First, the Tax Assessor argues that because the Poarch Band was not a federally recognized tribe under federal jurisdiction at the time the IRA was enacted in June 1934, land acquired by the Secretary and titled in the name of the United States for the Poarch Band is ineligible for the exemption from state and local taxation provided by 25 U.S.C. § 465. Second, the Tax Assessor argues that the Secretary's land-into-trust acquisitions exceeded its authority and violated 5 U.S.C. § 706(2)(A)-(C). Third, the Tax Assessor argues that a letter (the "Laverdure Letter") (Doc. 11-3) sent from Donald E. Laverdure, the Acting Assistant Secretary-Indian Affairs, to Escambia County Commission Chairman David Stokes on June 4, 2012 exceeded the Secretary's authority and violated 5 U.S.C. § 706(2)(A)-(C). Fourth, the Tax Assessor argues that because the Poarch Band was not a federally recognized tribe

---

tribal land into trust for the benefit of a tribe is limited to those tribes under federal jurisdiction in 1934, when the IRA was enacted. 555 U.S. at 391-95. Here, the Secretary of Indian Affairs recognized and "acknowledge[d] that the Poarch Band of Creeks . . . exists as an Indian tribe within the meaning of Federal law" on June 4, 1984. 49 Fed. Reg. 24,083-01 (June 11, 1984).

[7]     In addition to the United States, the Tax Assessor specifically included the Secretary in her official capacity, the Assistant Secretary-Indian Affairs in his official capacity, the DOI, and the BIA as Counterclaim Defendants in his Amended Answer. At the Hearing, however, counsel for the Tax Assessor conceded that because the United States is a Counterclaim Defendant in this matter, it is not necessary for the Department of the Interior, the Secretary, the Assistant Secretary-Indian Affairs, and the BIA to be counterclaim defendants in this matter and the Tax Assessor's counterclaims against these parties should be dismissed. *See generally Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting another source) ("Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"). Accordingly, the undersigned finds that these Counterclaim Defendants should be dismissed from this action. For clarity purposes, the undersigned will hereby refer to all of these parties collectively as the "United States" when discussing the United States Motion to Dismiss.

under federal jurisdiction at the time the IRA was enacted in June 1934, the United States has no legal capacity to act as trustee for the Poarch Band and the Secretary's trust established for the benefit for the Poarch Band is invalid and unenforceable.

On November 2, 2015, the United States filed the United States Motion to Dismiss requesting the Court to dismiss the Tax Assessor's counterclaims against the United States under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the United States argues that the counterclaims should be dismissed under Rule 12(b)(1) because the United States has not waived its sovereign immunity to the Tax Assessor's counterclaims in this action and under Rule 12(b)(6) because the counterclaims against the United States fail to state claims on which relief can be granted. Also on November 2, 2015, the Poarch Band and the Poarch Band Members filed the Poarch Band Motion to Dismiss and Strike requesting the Court to dismiss the Tax Assessor's counterclaims against them under Rule 12(b)(1) because they have not waived their tribal sovereign immunity, the expiration of the statute of limitations serves as jurisdictional bar to the counterclaims,[8] and the Quiet Title Act ("QTA") bars the counterclaims; and under Rule 12(b)(6) because the Tax Assessor's counterclaims are collaterally estopped in light of the recent decision by the Eleventh Circuit in *Alabama v. PCI Gaming Authority*, 801 F.3d 1278, 1287 (11th Cir. 2015). In addition, the Poarch Band and the Poarch Band Members request the Court to strike the Tax Assessor's affirmative defenses 2 through 12 as they are "insufficient as a matter of law."

---

[8]      While the United States did not address this argument in detail in its motion to dismiss, counsel for the United States did make this argument at the Hearing.

<u>Discussion</u>

I.     **Motions to Dismiss**

The United States, the Poarch Band, and the Poarch Band Members request that the Tax Assessor's counterclaims be dismissed under Rules 12(b)(1) and 12(b)(6) for multiple reasons. The Court has an obligation to make sure it has jurisdiction to hear this action and, thus, will first consider the Defendants' Rule 12(b)(1) arguments. *See Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1287 (11th Cir. 2015).

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction can be based on either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). The Eleventh Circuit Court of Appeals has discussed the different standards regarding facial and factual attacks as follows:

> If the challenge is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." [*Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)]. Accordingly, the "court must consider the allegations in the plaintiff's complaint as true." *Id.*
>
> A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* Furthermore, in *Williamson*, the former Fifth Circuit held that "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

*Id.* Here, the United States and the Poarch Band raise facial challenges to the Court's subject matter jurisdiction.[9] Therefore, for purposes of the Defendants' 12(b)(1) arguments, the Court will consider the Tax Assessor's factual allegations in the Amended Answer as true. While the Defendants make several Rule 12(b)(1) arguments–statute of limitations for claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-06; federal sovereign immunity; tribal sovereign immunity; and the QTA, the undersigned will begin by discussing the United States and the statute of limitations for APA claims.

### A.    The United States

Although the Tax Assessor frames his counterclaims in several different ways and names several different Counterclaim Defendants, all of his counterclaims simply amount to an attack on the validity of the Secretary's land-into-trust decisions for the benefit of the Poarch Band in light of *Carcieri*.[10] Specifically, the Tax Assessor argues

---

[9]        The United States specifically states that it "raises a facial challenge to the Court's subject-matter jurisdiction." (Doc. 59 at 8). The Poarch Band and the Poarch Band Members, on the other hand, do not specify whether their jurisdictional attack is facial or factual. Nevertheless, the undersigned construes the Poarch Band and the Poarch Band Members' jurisdictional arguments as a facial challenge because they argue that the Tax Assessor fails to allege any facts that "bring[ his claims] outside the scope of the Poarch Band's sovereign immunity" or exempt his claims from the statute of limitations under the APA and they do not submit any additional evidence in support of their arguments. (Doc. 60 at 14, 16 & 20-21). *See Balbuena v. McHugh*, No. 14-0188-KD-C, 2015 WL 6433258, at *3 (S.D. Ala. Sept. 24, 2015) (footnotes omitted) (quotation marks omitted) ("The undersigned construes the defendants' jurisdictional argument–the plaintiff having failed to make any assertion which establishes subject matter jurisdiction . . . as a facial challenge because the defendants accept plaintiff's allegations as true for purpose of its motion."); *Branch Banking and Trust Co. v. R & T Rentals, LLC*, 2011 WL 1539939, at *2-5 (S.D. Ala. Apr. 4, 2011) (treating a motion to dismiss under Rule 12(b)(1) as a facial attack because the movant did not submit any evidence in support of its jurisdictional challenge).

[10]        In Count III of the Amended Answer, the Tax Assessor alleges that the Laverdure Letter exceeded the Secretary's statutory and constitutional authority in
(Continued)

that because of the holding in *Carcieri*, the Poarch Band is not an "Indian Tribe" within the meaning of the IRA, and, thus, the Secretary's decisions to take real property into trust for the benefit of the Poarch Band are invalid. However, since *Carcieri*, courts, including the Eleventh Circuit, have found that challenges to the Secretary's land-into-trust decisions are subject to procedures of the APA,[11] including the six-year statue of limitations for challenging agency decisions. *See PCI Gaming Auth.*, 801 F.3d 1278, 1290-93 (11th Cir. 2015) (citing *Patchak*, 132 S.Ct. 2199, 2208 (2012)) (holding that the State of Alabama could not challenge the Secretary's decisions to take land into trust for the Poarch Band outside of a timely APA claim); *see also Big Lagoon Rancheria v. California*, 789 F.3d 947, 952-54 (9th Cir. 2015) (en banc) ("Allowing California to attack the BIA's decision to [take land into trust for an Indian tribe] outside the APA would constitute just the sort of end-run that we have previously refused to allow, and would cast a cloud of doubt over countless acres of land that have been taken into trust for tribes recognized by the federal government."). Accordingly, to the extent any of the Tax

---

violation of 5 U.S.C. § 706(2). At no point in his briefs or at the Hearing, however, does the Tax Assessor challenge the Secretary's authority to issue the letter itself. Instead, this argument is another attempt by the Tax Assessor to attack the validity of the underlying land-into-trust decisions. As discussed in more detail later in this Report and Recommendation, the Tax Assessor (unsuccessfully) argues that the Laverdure Letter is a "final agency action" in an attempt to bring his counterclaims challenging the Secretary's decisions within the applicable statute of limitations.

[11] Specifically, the APA entitles "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, to judicial review thereof." 5 U.S.C. § 702. A court presented with an APA claim "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706.

Assessor's counterclaims attempt to attack the Secretary's land-into-trust decisions outside the APA, they are improper collateral challenges.

The six-year statute of limitations applicable to APA claims against the United States is set forth in 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The Eleventh Circuit has held that the limitation period provided in § 2401(a) serves as a jurisdictional bar that is tied to the United States' sovereign immunity. *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006) (citing *Spannaus v. Dep't of Justice*, 824 F.2d 52, 55 (D.D.C. Cir. 1987)) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed.") The six-year limitations period begins to run for an APA claim once the agency issues the "final action" that gives rise to the claim. *PCI Gaming Auth.*, 801 F.3d at 1292 (citing *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007). Here, the Tax Assessor alleges that the Secretary most recently accepted Trust Property for the benefit of the Poarch Band in 1995.[12] *See* Docs. 66-1 & 41 at 21. Although the Tax Assessor's current attack on the validity of the Secretary's relevant land-into-trust decisions comes nearly two decades after any of those decisions were made, the Tax Assessor contends that his counterclaims are not barred by the APA's six-year statute of limitations. The undersigned disagrees.

---

[12] The Defendants do not dispute that the Secretary's decisions to take land into trust for the benefit of the Poarch Band are final agency actions for purposes of the statute of limitations.

The Tax Assessor's first argument that his challenge is not untimely is an attempted invocation of the exception to the APA's statute of limitations for as-applied challenges. Specifically, the Eleventh Circuit has "allowed an untimely challenge to a regulation on which an agency relies in taking final agency action on the ground that the regulation was outside the agency's statutory authority." *PCI Gaming Auth.*, 801 F.3d at 1292 (citing *Legal Envtl. Assistance Found., Inc. v. EPA*, 118 F.3d 1467, 1472-73 (11th Cir. 1997)). As the Eleventh Circuit explained in *PCI Gaming Authority*, this exception only applies "when the party could not have brought a timely challenge." *Id.* (citing *NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987)); *see also Big Lagoon Rancheria*, 789 F.3d at 954 n.6 (holding that the as-applied challenge exception to the APA's statute of limitations did not apply to California's untimely attack on the Secretary's land-into-trust decision because the evidence showed that "California understood the 'true state of affairs'" regarding the decision in time to challenge the decision timely). Here, the undersigned finds that the Tax Assessor could have brought a timely challenge to the Secretary's land-into-trust decisions for the benefit of the Poarch Band. The Tax Assessor has been undoubtedly aware of the "true state of affairs" regarding the Secretary's decision to take the Trust Property for the benefit of the Poarch Band since August 18, 1986, when the Alabama Attorney General issued an advisory opinion (the "AG Opinion") (Doc. 41-2) in response to the Tax Assessor's specific inquiry about whether the Trust Property is exempt from state taxation.  In the AG Opinion, the Alabama Attorney General stated, "You ask whether the Indian reservation property will be exempt from taxation in the future. Your question is answered in the affirmative. Absent cession of jurisdiction or other federal statutes permitting it, there is no authority for state taxation of Indian reservation lands . . . ." (*See* Doc. 41-2).

Much like the state of Alabama in *PCI Gaming Authority*, the Tax Assessor does not argue that it was unaware that the Secretary was taking lands into trust for the Poarch Band.[13] Instead, the Tax Assessor argues that he refrained from challenging the Secretary's decisions in the years between 1986 and this current challenge because of "erroneous guidance" from the Alabama Attorney General. First, written opinions of the Alabama Attorney General are merely advisory, thus, the AG Opinion did not prevent the Tax Assessor from filing a suit challenging the Secretary's land-into-trust decisions. *See Reform Party of Ala. v. Bennett*, 18 F. Supp. 2d 1342, 1354 (M.D. Ala. 1998) *aff'd*, 158 F.3d 1171 (11th Cir. 1998) ("Attorney General's opinions are merely advisory in nature and do not have the effect of law."); *J.M.R. v. Cty. of Talladega*, 686 So. 2d 209, 210 n.1 (Ala. 1996) (explaining the limited protection state officers receive when relying on Alabama Attorney General opinions). Second, even if the AG Opinion was binding on the Tax Assessor, the AG Opinion only provides that "there is no authority for state taxation of Indian reservation lands or Indian income from activities carried within the boundaries of the reservation." Doc. 41-2 at 1-2. The AG Opinion does not speak to the validity of the Secretary's land-into-trust decisions regarding the Trust Property or the Tax Assessor's ability to challenge said decisions as being beyond the Secretary's statutory authority. Thus, the undersigned does not find that the AG Opinion precluded the Tax Assessor from challenging the Secretary's decisions to take land into trust for the benefit of the Poarch Band.

The Tax Assessor also argues that he could not have brought a challenge within six years of the relevant land-into-trust decisions because a cause of action had not yet

---

[13]     The property at issue in *PCI Gaming Authority* included Trust Property in the present case.

accrued for 2009 and beyond, the years for which the Tax Assessor now intends to assess the Trust Property. However, the Tax Assessor's counterclaims attack the Secretary's land-into-trust decisions spanning from 1984 to 1995 and the resulting tax exempt-status of the Trust Property. The operative question for invoking the as-applied exception for the APA statute of limitations is not whether the Tax Assessor could have assessed the Trust Property for taxes within six years of the Secretary's decision, it is whether the Tax Assessor could have challenged the Secretary's decision to take the land into trust within six years of those decisions. It may be true that the Tax Assessor could not yet assess taxes on the Trust Property for the years 2009 and beyond within six years of 1995. But that has no impact on the Tax Assessor's ability within that time to challenge the relevant land-into-trust decisions and the resulting tax-exempt status as it is undisputed that the Tax Assessor had knowledge of the relevant decisions and understood the "true state of affairs" regarding their effect on the Trust Property. (*See* Doc. 41-2). For these reasons, assuming *arguendo* that the Tax Assessor would even be entitled to invoking the as-applied challenge,[14] the undersigned finds that the Tax Assessor could have brought a challenge earlier. Therefore, the exception does not apply.[15]

---

[14]     In arguing whether the Tax Assessor is entitled to the exception to the APA's statute of limitations for as-applied challenges, the Parties dispute whether this action is an "enforcement proceeding" by the Poarch Band. Because the undersigned finds that the Tax Assessor is not entitled to the exception because he could have brought a timely challenge to the Secretary's land-into-trust decisions, it is unnecessary for the Court to determine whether this action constitutes an "enforcement proceeding" for the purpose of the as-applied exception to the six-year limitation period for APA claims.

[15]     This conclusion is supported by the Eleventh Circuit's opinion affirming Judge Granade's Preliminary Injunction Order, which provides:

(Continued)

The Tax Assessor's second argument that his challenge is not untimely relates to his challenge of the June 4, 2012 Laverdure Letter, which, according to the Tax Assessor, is a final agency action subject to judicial review under the APA. The Laverdure Letter, written in response to a letter from the Escambia County Commission requesting the United States' position regarding the Trust Property in the wake of *Carcieri*, provides the following:

> Thank you for your letter dated April 17, 2012, to Secretary Salazar requesting information about the Reservation for the Poarch Band of Creek Indians (Band). The Secretary has asked me to respond to your letter.
>
> In response to your request, the Department of the Interior can confirm that the land referenced in your letter was acquired in trust by the United States in 1984 and proclaimed to be a Reservation in 1985. The Band's Reservation, including the portion of the Reservation that is situated within the geographical boundary of Escambia County, Alabama, is held in trust by the United States for the Benefit of the Band. As such, the Band enjoys all rights and privileges associated with having its Reservation held in trust by the United States under Federal Law.

(Doc. 11-3).

There is a two-part test for determining whether or not an agency's action is final: (1) the action must "mark the consummation of the agency's decision-making

---

> We rejected the same argument on similar facts in *PCI Gaming*, refusing to 'carve out an exception to the six-year statute of limitations' where it was clear that the State of Alabama knew of the Secretary's action and could have brought a timely APA challenge. 801 F.3d at 1292. The record in this case similarly reflects that Hildreth, like the State of Alabama in *PCI Gaming*, was well aware of the Secretary's decision to take the Poarch Band's property into trust close in time to the decision–he made a written inquiry of the Secretary in 1986 regarding the effect of the conveyance. To recognize an exception and permit a collateral challenge nearly 30 years later, where the record clearly reflects that the [Tax Assessor] could have raised a timely challenge but did not, would turn *PCI Gaming* on its head.

(Doc. 75 at 18-19).

process–it must not be of merely tentative or interlocutory nature" and (2) the action must "be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotations and citations omitted). In support of the Tax Assessor's argument that the Laverdure Letter constitutes final agency action, he solely relies on *Seminole Nation of Oklahoma v. Norton*, 223 F. Supp. 2d 122, 142 (D.D.C 2002) (quoting another source), which provides that "'a guidance document reflecting a settled agency position and having legal consequences for those subject to regulation may constitute final agency action' for the purpose of judicial review."

In that case, the Seminole Nation of Oklahoma alleged that the DOI violated the APA by not recognizing the Nation's general council in conducting government-to-government relations and the Nation's newly elected principal chief. *Seminole Nation of Okla.*, 223 F. Supp. 2d at 125. The Nation had held a referendum election seeking to adopt nine amendments to its constitution, several of which were designed to exclude Freedmen, Indians of partial African descent, from membership. *Id.* In response to the election, a DOI assistant secretary informed the Nation that he would not approve the amendments to the constitution because of the attempted exclusion and because they had not been submitted to the DOI for approval. *Id.* The Nation then filed a lawsuit challenging the DOI's authority to review and approve its amendments. *Id.* While the suit was pending, the Nation held elections in accordance with the amendments in question and elected a new principal chief of the Nation. *Id.* The United States District Court for the District of Columbia held that the DOI had the authority pursuant to the Nation's constitution to approve amendments before they could be adopted. *Id.* at 126. The district court, however, held that the DOI improperly disapproved six of amendments, all of which were unrelated to the membership of Freedmen, because the

DOI failed to express a "rational objection to the substance of these amendments." *Id.* Accordingly, the court remanded those six amendments to the DOI for approval or rejection. *Id*. Following the lawsuit, an acting regional director of the BIA informed the Nation that the BIA would not restore a "government-to-government relationship" with the Nation or recognize the new principal chief until the Nation, *inter alia*, restored the Freedmen to its general council. *Id.* Thereafter, the Nation and the BIA negotiated to resolve the issues regarding recognition of the Nation's general council. *Id.* at 127-28. After several exchanges of correspondence, an assistant secretary sent a letter addressed to both the former and new principal chiefs of the Nation stating:

> We realize that there are a number of band representatives who were in office prior to the July 2001 elections and who were reelected. We will recognize those band members as validly elected holdover officials. We will also recognize as band representatives those individuals elected at new band elections which were open to all candidates of one quarter or more Indian blood and who were elected in accordance with their duly established band governing documents and practices. We will recognize a new constituted Seminole General Council consisting of band representatives elected prior to July 2001 and these newly elected band representatives.

*Id.* at 129. The Nation argued that this letter was a final agency action that bound the DOI to recognize the Nation's general council. *Id.* at 130. The DOI contrarily argued that the letter was just a statement of the basis on which the DOI would recognize a newly constituted council. *Id.* While the court held that the letter did not constitute final agency action concerning the recognition of the Nation's general council because the letter clearly expressed the DOI's desire to continue discussions to resolve any remaining issues with the Nation, the court found that the letter did constitute final agency action regarding the one-quarter Seminole Indian blood requirement because the letter provided guidance about how the council could gain recognition and reiterated in writing–what had previously been stated verbally multiple times–that the

agency had adopted an additional reason (*i.e.* the one-quarter Seminole Indian blood requirement) for refusing to recognize the Nation's general council. *Id.* at 142.

Unlike the letter in *Seminole Nation*, the Laverdure Letter is not a "guidance document" that has "legal consequences for those subject to regulation." In *Seminole Nation*, the relevant letter reiterated a new requirement for the DOI to recognize the Nation's general council for government-to-government relations that had only been previously communicated verbally. *Id.* at 142-43. The court held that this new requirement constituted the "consequences" the letter would have for the Nation. *Id.* Contrarily, the Laverdure Letter was a response to a request from the Tax Assessor that did not affect the rights or alter the status quo. This is similar to the scenario in *Impro Products, Inc. v. Block*, 722 F.2d 845 (D.D.C. 1983), where the court held that a letter from a United States Department of Agriculture administrator in response to the last of numerous inquiries by a manufacturer affirming the Department's earlier decision to disseminate test results by publication did not constitute a "final agency action."

Specifically, the *Impro Products, Inc.* court found that the manufacturer's characterizations of its letter to the USDA as a request for a final resolution and the response letter as a final agency action were "patently specious," stating, "[I]t is absurd to argue that the last date of inquiry is the relevant date for statute of limitations purposes[, and] it is surely a frivolous contention to suggest that USDA is somehow bound by Impro's self-serving characterization of the . . . letter as a request for a final ruling." 722 F.2d at 850. The court went on to emphasize that the manufacturer's last letter to the USDA "in no way affected rights, or altered the status quo" and that a contrary ruling would enable parties to circumvent the APA statute of limitations by "simply writing a letter." *Id.* at 851. Stokes' letter to the Secretary, which elicited the Laverdure Letter, in no way affected rights or altered the status quo. It was a request

that occurred nearly three decades after the Secretary's first land-into-trust decision for the benefit of the Poarch Band.

The Laverdure Letter, which simply confirmed that the Trust Property was taken into trust by the United States, the Trust Property is held in trust by the United States for the benefit of the Poarch Band, and the Poarch Band enjoys all rights and privileges associated with having the property held in trust, did not have "legal consequences" for the Tax Assessor. Contrary to the situation in *Seminole Nation*, and other cases in which guidance letters have been deemed final agency action, the Laverdure Letter did not establish or alter any requirements or obligations for the Tax Assessor. *See Alabama v. Ctrs. For Medicare & Medicaid Servs.*, 780 F. Supp. 2d 1219, (M.D. Ala. 2011) (rejecting an argument that no legal consequences flowed from a letter issued by the Centers for Medicare & Medicaid Services when it "imposed[d] legal obligations on the states that neither the plain language of the Medicaid Act nor the regulations promulgated by CMS impose."); *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45 (D.D.C. 2000) (finding that a letter from a branch chief of the Environmental Protection Agency, together with guidance on the EPA's website and statements in a rulemaking preamble, stating what a mining company must do to comply with a program recently extended to the mining industry had legal consequences on the mining company); *Ciba-Geigy Corp v. U.S.E.P.A.*, 801 F.2d 430, 436-37 (D.D.C. 1986) (holding that a letter from an agency official stating the agency's position and requiring a company's "immediate compliance" constituted final agency action); *Her Majesty the Queen in Right of Ont. v. EPA*, 912 F.2d 1525, 1531-32 (D.C. Cir. 1990) (finding that letters from an EPA official that had "direct and immediate impact on the parties" constituted a final agency action). In these cases, the agency letters in question reflected a new action or position that had "legal consequences for those subject to regulation." The Laverdure Letter

simply confirmed the Secretary's past actions regarding the Trust Property. For this reason, the undersigned finds that it does not constitute a final agency action. To hold otherwise would provide the Tax Assessor with "an easy means to circumvent the statute of limitations applicable to actions under the APA, simply by writing a letter." *See Impro Products, Inc.*, 722 F.2d at 851. Accordingly, the Court does not have subject matter jurisdiction to consider the Tax Assessor's APA claims about the Laverdure Letter. *See Alabama v. U.S.*, 630 F. Supp. 2d 1320, 1325 & n. 4 (S.D. Ala. 2008) Moreover, the undersigned rejects the Tax Assessor's argument that his challenge to the Laverdure Letter affects the timeliness of his challenge to the Secretary's land-into-trust decisions for the benefit of the Poarch Band that last occurred in the mid 1990s.

For these reasons, the undersigned finds that the Tax Assessor's APA claims attacking the validity of the Secretary's relevant land-into-trust decisions, which comes nearly two decades after the last decision was made, is barred by the applicable six-year statute of limitations. As a result, the undersigned finds that the Tax Assessor's counterclaims against the United States should be dismissed pursuant to Rule 12(b)(1). The undersigned notes that the Supreme Court recently held that the statute of limitations regarding the Federal Tort Claims Act in 28 U.S.C. § 2401(b) was not jurisdictional because Congress had "provided no clear statement indicating that § 2401(b) is a rare statute of limitations that can deprive a court of jurisdiction. *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1632 (2015). Nonetheless, the Eleventh Circuit has explicitly held that § 2401(a) is jurisdictional, *see Hamilton*, 453 F.3d at 1335, and because the Supreme Court's holding in *Kwai Fun Wong* is limited to § 2401(b), this Court is bound by the Eleventh Circuit's precedent. *Builders Flooring Connection, LLC v. Brown Chambless Architects, LLC*, No. 2:11CV373-MHT, 2014 WL 197679, at *4 (M.D. Ala. Jan. 16, 2014) (citing *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008))

("Under Eleventh Circuit law, trial courts 'are bound to follow a prior binding precedent 'unless and until it is overruled by [the Eleventh Circuit] en banc or by the Supreme Court.'""). There is no *en banc* Eleventh Circuit case overruling *Hamilton*. Thus, to overcome the prior precedent rule, the Supreme Court's decision in *Kwai Fun Wong* "must have actually overruled or conflicted with" *Hamilton. Vega-Castillo*, 540 at 1237 (citations omitted) ("There is a difference between the holding in a case and the reasoning that supports that holding. Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision."). Therefore, it is for the Eleventh Circuit to determine in the first instance what effect, if any, *Kwai Fun Wong* has on its precedent that § 2401(a) is jurisdictional. *See Horvath v. Dodaro*, No. 15-210 (CKK), 2015 WL 7566665, at *6 n.9 (D.D.C. Nov. 24, 2015). Consequently, the undersigned finds that the United States Motion to Dismiss be granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. In light of the Court's lack of subject matter jurisdiction over the Tax Assessor's claims against the United States because of the applicable statute of limitations, it is unnecessary for the undersigned to address the United States' other arguments under Rules 12(b)(1) and 12(b)(6).

### B.    The Poarch Band and the Poarch Band Members

Turning to the Poarch Band and Poarch Band Members' Rule 12(b)(1) arguments, the undersigned finds that they are both entitled to tribal sovereign immunity. "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *PCI Gaming Auth.*, 801 F.3d at 1287 (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)). Accordingly, Indian tribes possess "'the common-law immunity from suit traditionally enjoyed by sovereign powers.'" *Id.* (quoting *Florida v. Seminole Tribe of Fla. (Seminole*

19

*Tribe II)*, 181 F.3d 1237, 1241 (11th Cir. 1999)). A lawsuit against an Indian tribe is "barred unless the tribe clearly waived its immunity or Congress expressly abrogated that immunity by authorizing the suit." *Id.* This tribal sovereign immunity generally extends to tribal officials acting in their official capacity and within the scope of their authority. *Id.* at 1288 (citing *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians (Tamiami III)*, 177 F.3d 1212, 1225 (11th Cir. 1999)). Here, the Tax Assessor does not argue that the Poorch Band has waived its tribal immunity or that Congress has abrogated that immunity. Instead, he simply states:

> The Poorch Band's assertion of sovereign immunity gains nothing because this Court has jurisdiction over Hildreth's counterclaims against the United States. Thus the issues will be litigated and, presumably, the Tribe will remain aligned as a counterclaim defendant in order to participate in defending its interests in the Poorch Creek Property. Hildreth certainly does not concede that the Tribe and its individual tribal officials enjoy sovereign immunity from his counterclaims, but the Court need not decide this issue.

(Doc. 65-1 at 13). Despite the Tax Assessor's insistence that the Poorch Band "presumably" will want to "remain aligned as a counterclaim defendant in order to participate in defending its interests" in the Trust Property, the Poorch Band has made it clear that presumption is incorrect. (*See* Doc. 70 at 3). For these reasons, the undersigned finds that the Tax Assessor's counterclaims against the Poorch Band are barred by tribal sovereign immunity.

As for the Poorch Band Members, the Tax Assessor did not address the Poorch Band Members' tribal immunity in his response brief, but he cited two cases at the Hearing in support of the position that the Poorch Band Members are not entitled to tribal sovereign immunity against his counterclaims: *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024 (2014) and *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005). The Tax Assessor's citation of *Bay Mills* appears to be an attempt to

invoke the *Ex parte Young* doctrine briefly discussed by the Supreme Court in its majority opinion. *See Bay Mills*, 134 S.Ct. at 2035 ("As this Court has stated before, analogizing to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), tribal immunity does not bar such a suit for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct."). In *PCI Gaming*, the Eleventh Circuit specifically discussed how the *Ex parte Young* doctrine applies to tribal officials, stating:

> Under the legal fiction established in *Ex* [*p*]*arte Young*, when a state official violates federal law, he is stripped of his official or representative character and no longer immune from suit. *Id.* at 159–60, 28 S.Ct. 441. "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young fiction," such that the state officer is not immune from suit. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).
>
> We previously have extended the *Ex parte Young* doctrine to tribal officials. Although tribal officials are generally entitled to immunity for acts taken in their official capacity and within the scope of their authority, "they are subject to suit under the doctrine of Ex parte Young when they act beyond their authority" by violating a federal statute. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians (Tamiami III)*, 177 F.3d 1212, 1225 (11th Cir. 1999).

801 F.3d at 1288. The Eleventh Circuit further explained that while the *Ex parte Young* doctrine does not reach state law claims brought against state officials in their official capacity, tribal officials may be subject to suit in federal court for violations of state law under the fiction of *Ex parte Young* when their conduct occurs outside of Indian lands. *Id.* at 1290 (citing *Bay Mills*, 134 S.Ct. at 2034-35).

In *PCI Gaming*, the Eleventh Circuit held that the *Ex parte Young* doctrine applied to the tribal officials, and, accordingly, the individual officials were not entitled to tribal sovereign immunity against the state of Alabama's claims that the individual officers violated the IGRA. *Id.* at 1288-90. Unlike the scenario in *PCI Gaming*, the Tax Assessor has not alleged that the individual Poarch Band Members are engaging in ongoing conduct that violates federal law. *See id.* at 1288 ("Because Alabama alleges that the

Individual Defendants are engaged in ongoing conduct that violates federal law, the Individual Defendants are not entitled to Immunity."). In fact, nowhere in the Amended Answer does the Tax Assessor allege *any* violations of law by the Poarch Band Members. While the Amended Answer does list the individual Poarch Members as Counterclaim Defendants, at no point in the Amended Answer, does the Tax Assessor allege the Poarch Band Members are violating any law, state or federal.[16] Instead, the counterclaims merely allege that Secretary's land-into-trust decisions for the benefit of the Poarch Band were unlawful. Thus, the undersigned finds that the *Ex parte Young* doctrine does not apply to the Poarch Band Members in this matter.

As for *City of Sherrill*, the Tax Assessor cited it at the Hearing as a case where the efforts of a city and county to tax an Indian tribe were not barred by sovereign immunity because the tribe was not on valid trust land. While the Supreme Court did hold that the Oneida Indian Nation of New York ("OIN") was barred from asserting sovereign immunity from paying city property taxes, the case is distinguishable from the facts currently before this Court and does not impact the undersigned's determination of whether the Poarch Band Members are entitled to tribal sovereign immunity. *City of Sherrill* concerned parcels of land purchased by the OIN in the late 1990s. 544 U.S. at 202. The land in question was once possessed by OIN's predecessors, the Oneida Indian Nation ("Nation"), as it was included within the Nation's original 300,000-acre reservation. *Id.* The Nation conveyed the lands to a non-Indian entity

---

[16]     When counsel for the Poarch Band Members made this point at the Hearing, counsel for the Tax Assessor did not directly refute it, but instead stated that he included the Poarch Band Members in his Amended Answer because he recognized, after the *Bay Mills* decision, that the Poarch Band would likely assert a tribal sovereign immunity defense.

around the beginning of the 19th Century. *Id.* at 211. The lands thereafter remained in non-Indian hands, and were thus governed by New York State and its county and municipal units, until the lands were purchased nearly two centuries later by the OIN.[17] *Id.* at 202, 211. The OIN then began operating several commercial enterprises on the property, but because the property was located within the boundaries of the original Nation reservation, the OIN refused to pay assessed property taxes. *Id.* at 211. The city of Sherrill initiated eviction proceedings, and the OIN sued the city and the corresponding county in federal court seeking equitable relief barring the imposition of property taxes. *Id.* at 211-12. The district court and a panel of the Second Circuit Court of Appeals held that the lands owned by the OIN were not taxable by the city or the county, and the city appealed to the Supreme Court. *Id.* at 212. According to the Nation, it was not responsible for paying property taxes to the city of Sherrill because the Nation's acquisition of the lands in the 1990s revived its ancient sovereignty over the parcels, and, accordingly, the city of Sherrill no longer had regulatory authority over the purchased property.  *Id.* at 202. The Supreme Court reversed and remanded the lower court judgment, holding:

> [G]iven the longstanding, distinctly non-Indian character of the area and its inhabitants, the regulatory authority constantly exercised by New York State and its counties and towns, and the Oneidas' long delay in seeking judicial relief against parties other than the United States, the [OIN] cannot unilaterally revive its ancient sovereignty over the purchased lands.

*Id.* at 202-03. This holding is not applicable to the case at hand, especially regarding the question of whether the Poarch Band Members are entitled to tribal sovereign

---

[17]     During this period, the number of Oneidas who lived on the property diminished. *Id.* at 206-11. According to the 2000 census, more than 99% of the area was non-Indian. *Id.* at 211.

immunity against the Tax Assessor's counterclaims. The Supreme Court's holding was based upon several equitable considerations, such as the "doctrine of laches, acquiescence, and impossibility," none of which appear to be relevant in this matter. Further, the land in question was not acquired pursuant to IRA, and the Supreme Court did not discuss tribal sovereign immunity of any individual tribal members. The undersigned also notes that beyond merely mentioning *City of Sherrill* and its general holding, the counsel for Tax Assessor did not provide any substantive argument or analysis as to why the Supreme Court's decision would have any bearing on the instant case, much less any bearing on whether the Poarch Band Members are entitled to tribal sovereign immunity. For these reasons, the undersigned does not find *City of Sherrill* controlling regarding the whether the Poarch Band's tribal immunity is extended to the Poarch Band Members. For these reasons, the undersigned finds that the Tax Assessor's counterclaims against the Poarch Band Members are barred by tribal sovereign immunity.

In sum, the undersigned finds that the Poarch Band has not waived its tribal immunity or that Congress has abrogated that immunity. Accordingly, the Tax Assessor's counterclaims are barred by the Poarch Band's tribal immunity. Further, the undersigned does not find any reason why the Poarch Band's immunity should not extend to the Poarch Band Members in this instance. The undersigned thus finds that the Tax Assessor's counterclaims against the Poarch Band and the Poarch Band Members should be dismissed pursuant to Rule 12(b)(1). Consequently, the undersigned finds that the Poarch Band Motion to Dismiss and Strike be granted to the extent that the Tax Assessor's counterclaims against the Poarch Band and the Poarch Band Members be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. In light of the Court's lack of subject matter jurisdiction over the Tax

Assessor's claims against the Poarch Band and the Poarch Band Members because of tribal sovereign immunity, it is unnecessary for the undersigned to address their other arguments under Rules 12(b)(1) and 12(b)(6).

## II.    Motion to Strike

Rule 12(f) provides that "[t]he court *may*[18] strike from a pleading an insufficient defenses or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f) (emphasis added). Courts disfavor motions to strike as it is a drastic remedy that will usually be denied unless the allegations have no possible relation to the controversy, may confuse the issues, or otherwise prejudice a party. *See F.T.C. v. PSC Admin., LLC*, No. 15-0084-WS-B, 2015 WL 3422642, at *1 (S.D. Ala. May 28, 2015); *Barna Conshipping, S.L. v. 1,900 Metric Tons, more or less, of Abandoned Steel*, No. 09-0027-KD-C, 2009 WL 1211334, at *1 (S.D. Ala. May 4, 2009); *Principal Bank v. First Am. Mortg., Inc.*, No. 2:10-cv-90-FtM-29DNF, 2014 WL 1268546, at *1 (M.D. Fla. Mar. 27, 2014). "[T]he movant must make a strong showing to succeed in striking an affirmative defense. It should be stricken only where it is [legally] insufficient on the face of the pleadings." *F.T.C.*, 2015 WL 3422642 at *1 (citations omitted) (quoting another source). A defense is "insufficient as a matter of law" only if "(1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Barna Conshipping, S.L.*, 2009 WL 1211334 at *1 (quoting another source).

The Poarch Band and the Poarch Band Members request the Court to strike the Tax Assessor's affirmative defenses 2, 3, 6, 7, 8, 10, 11, and 12 as they are "insufficient as a matter of law" because they are entirely dependent upon the Tax Assessor's assertion

---

[18]    "The Court has broad discretion in considering a motion to strike under Federal Rule of Civil Procedure 12(f)." *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1360 (S.D. Fla. 2009) (citations omitted).

that pursuant to *Carcieri*, the Poarch Band is not an "Indian tribe" within the meaning of the IRA, and, thus, the Secretary's decision to take the Trust Property for the benefit of the Poarch Band was unlawful. They also request the Court to strike the Tax Assessor's affirmative defenses 2, 4, 5, 9, and 10 because they are "insufficient as a matter of law" for various other reasons.

In support of their request to strike affirmative defenses 2, 3, 6, 7, 8, 10, 11, and 12, the Poarch Band and the Poarch Band Members cite *Big Lagoon Rancheria*, 789 F.3d at 952-54 for the position that the defenses amount to a collateral attack on the Secretary's land-into-trust decisions for the benefit of the Poarch Band and the 1984 designation of the Poarch Band as an Indian tribe. Similar to the Eleventh Circuit in *PCI Gaming Authority*, the undersigned finds the Ninth Circuit Court of Appeals' decision in *Big Lagoon Rancheria* persuasive, and finds that any of the Tax Assessor's affirmative defenses that amount to an attack on the Secretary's land-into-trust decisions for the benefit of the Poarch Band or the 1984 designation of the Poarch Band as an Indian tribe are collateral challenges outside the APA and should be stricken as clearly invalid as a matter of law. *See* 789 F.3d at 952 ("Although the State frames these issues in terms of challenges to standing and asserts them as affirmative defenses, the State's arguments amount to collateral attacks on the BIA's 1994 decision to take the eleven-acre parcel into trust and its pre-1979 designation of Big Lagoon Rancheria as an Indian tribe."); *PCI Gaming Auth.*, 801 F.3d 1278 at 1291 (citing *Big Lagoon Rancheria*, 789 F.3d at 947) ("We find persuasive the opinion of the Ninth Circuit sitting en banc, which recently held that California could not raise a collateral attack–that is, make a challenge outside an APA claim–to the Secretary's authority to take lands into trust for an Indian tribe."). The undersigned finds that the inclusion of these collateral challenges, disguised as affirmative defenses, may confuse the issues involved in this matter going forward.

However, upon review of the Tax Assessor's affirmative defenses, the undersigned only finds affirmative defenses 2 (lack of subject matter jurisdiction "because the Poarch Band lacks 'Indian tribe' status for purposes of § 1362 jurisdiction and its claims in this action"), 3 (lack of standing "because the Poarch Band is not an 'Indian tribe' within the . . . IRA"), 6 (the Poarch Band's federal trust is void because the Secretary has no authority under the IRA to take the land into trust for the benefit of the Poarch Band), 7 (the Poarch Band's federal trust is void because the Secretary does not have the authority under the IRA to continue holding the Trust Property for the benefit of the Poarch Band), and 8 (the federal trust for the benefit of the Poarch Band is invalid because the "Secretary did not have legal capacity" to take the land into trust and federal trusts established under the IRA are authorized "*only . . . for Indians*") "clearly" constitute collateral challenges to the Secretary's decisions to take the Trust Property for the benefit for the Poarch Band and/or the 1984 designation of the Poarch Band as an Indian tribe. *See Big Lagoon Rancheria*, 789 F.3d at 952. While the Tax Assessor's affirmative defenses 10 (the Tax Assessor is legally obligated to assess the Trust Property because the Poarch Band cannot establish that the Trust Property is exempt), 11 (Congress' delegation of legislative power in the IRA to authorize the Secretary to acquire property and hold it in trust for an Indian tribe violates the "Nondelegation doctrine"), and 12 (the exclusion of Escambia County's taxation jurisdiction over the Trust Property would be counter to the IRA, the Tenth Amendment of the U.S. Constitution, and Article I, Section 8, of the U.S. Constitution) *could* be based on a collateral challenge to the Secretary's land-into-trust decisions and/or the designation of the Poarch Band as an Indian tribe, it is not clear, based upon their faces, that these affirmative defenses could *only* be premised on those potential collateral attacks.

Turning to the Poarch Band and Poarch Band Members' other arguments regarding affirmative defenses 4 (failure to join a required party), 5 (waiver of tribal sovereign immunity to the assessment of property taxes), 9 (the state of Alabama has not consented to exclusive federal jurisdiction over the Trust Property or ceded its taxation jurisdiction over the property), and 10 (the previously mentioned Tax Assessor's obligation to assess property taxes), the undersigned declines to exercise its discretion to grant their motion to strike. While they argue that these defenses are insufficient as a matter of law, they do not assert any argument that these affirmative defenses somehow prejudice them, may confuse the issues, or have no relation to this controversy (*see* Doc. 60 at 31-34), and the undersigned's review of the defenses reveals that they do not suffer from those flaws. Consequently, the undersigned finds that the Poarch Band and the Poarch Band Members have failed to make a strong enough showing to warrant such "an extreme and disfavored measure." *See Nationwide Mut. Ins. Co. v. Nall's Newton Tire*, No. 14-110-CG-M, 2014 WL 3871224, at *2 (S.D. Ala. Aug. 7, 2014) (quoting another source). For these reasons, the undersigned finds that the Poarch Band Motion to Dismiss and Strike be granted in part to the extent that the Tax Assessor's affirmative defenses 2, 3, 6, 7, and 8 be stricken and denied in part to the extent that the Tax Assessor's affirmative defenses 4, 5, 9, 10, 11, 12 are not stricken.

## Conclusion

The undersigned finds that the Tax Assessors' counterclaims against the Secretary, the Assistant Secretary-Indian Affairs, the DOI, and the BIA should be dismissed because, as the counsel for the Tax Assessor conceded at the Hearing, they are not necessary Counterclaim Defendants in this matter. *See supra* note 7. Further, the undersigned finds that that the Tax Assessor's counterclaims against the United States should be dismissed pursuant to Rule 12(b)(1) because they are barred by the applicable

six-year statute of limitations, and the Tax Assessor's counterclaims against the Poarch Band and the Poarch Band Members should be dismissed pursuant to Rule 12(b)(1) because they are barred by tribal sovereign immunity. Finally, the undersigned finds that the Tax Assessor's affirmative defenses 2, 3, 6, 7, and 8 should be stricken as they are invalid as a matter of law and may confuse the issues in this matter going forward, and the Tax Assessor's affirmative defenses 4, 5, 9, 10, 11, 12 should not be stricken because the Poarch Band and the Poarch Band Members have failed to show that these defenses somehow prejudice them, may confuse the issues, or have no relation to this controversy. In conclusion, after careful consideration, and for the reasons set forth above, it is hereby **RECOMMENDED** that the United States Motion to Dismiss be **GRANTED** and the Poarch Band Motion to Dismiss and Strike be **GRANTED IN PART** and **DENIED IN PART**.

### <u>Notice of Right to File Objections</u>

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be

specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 10th day of August 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**